ROGERS, BROWN & MEACHAM

*v.*

THE JEWELL BELTING COMPANY.

*Opinion filed February 19, 1900—Rehearing denied April 11, 1900.*

1. SURETY—*what does not change relation of surety to that of joint maker.* That the stockholders, officers and directors of two distinct corporations are the same persons does not render one corporation liable for the debts of the other, so as to constitute them joint makers of a note upon which they would otherwise be principal and surety.

2. SAME—*when the question of consideration does not affect liability of surety.* If the execution of a note as surety by a corporation is not for a legitimate corporate purpose, the fact that there was an extension of time to the principal does not affect the question of the surety's liability.

*Jewell Belting Co.* v. *Rogers,* 84 Ill. App. 249, reversed.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the County Court of St. Clair county; the Hon. FRANK PERRIN, Judge, presiding.

CHARLES W. THOMAS, for plaintiff in error.

F. N. JUDSON, and JOHN F. GREEN, for defendant in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The Todd Pulley and Shafting Works, a corporation of East St. Louis organized to carry on the general business of a foundry, made a voluntary assignment for the benefit of its creditors April 19, 1898. The Jewell Belting Company, defendant in error, a corporation of Connecticut, filed a claim against the assigned estate based on six promissory notes, dated March 17, 1898, for $1861.87 each, payable to said Jewell Belting Company in two, four, six, eight, ten and twelve months after date, respectively, with interest at six per cent, signed by the Todds & Stanley Mill Furnishing Company, a corporation of Missouri, and by the insolvent, the Todd Pulley and Shafting Works. The firm of Rogers, Brown & Meacham, plaintiff in error, filed exceptions, as creditor of the insolvent, to said claim, on the ground that the insolvent corporation signed the notes as surety for the Missouri corporation; that there was no consideration moving to the insolvent for the execution of the notes, and that they were accommodation paper and *ultra vires* and void. There was a hearing before the county court and the claim was disallowed. An appeal was taken to the Appellate Court for the Fourth District, and that court reversed the judgment of the county court and remanded the cause, with directions to allow the claim.

The material facts as proved at the hearing are as follows: The Jewell Belting Company consigned to the

Todds & Stanley Mill Furnishing Company, the Missouri corporation at St. Louis, leather belting at a certain price, with an agreement that said consignee might sell the goods and have as its profit the difference between said invoice price and the selling price, and said consignee was to remit on the 10th or 15th of each month for the sales of the preceding month. Some time in 1897 there was a settlement between the parties, and afterward the Missouri corporation sold goods amounting, with interest, to $11,282.44, which was due the Jewell Belting Company March 17, 1898, when the notes were made. Part of this belting had been sold to the Todd Pulley and Shafting Works, the Illinois corporation, and had been used partly upon its machinery at its foundry at East St. Louis and partly to fill orders from its customers for leather belting. The belting so sold to the insolvent was charged on the books of the Missouri corporation, but there was no evidence what the charges were or the amount. The remainder of the belting was used by the Missouri corporation or sold to other parties. The stockholders in the two corporations were the same persons, and they had the same officers and directors. They kept separate books showing the property of each and were separate and distinct, but whenever one had money it was used to meet liabilities of the other, if necessary, and charged to the other. One corporation would sign paper as maker and the other endorse it, and money would be raised in that way when necessary. If the Illinois corporation needed money and the Missouri corporation had it, it would send over money, and *vice versa.* The money received by the Missouri corporation for the sale of belting was used the same as other money, and could not be distinguished from other money of that corporation. There was no means of telling what particular money was furnished by the Missouri corporation to the Illinois corporation, or whether any of it was received for belting. The ledger of the insolvent Illinois

corporation containing its account with the Missouri corporation, which sold the belting, showed that on the date of the notes the Missouri corporation was indebted to said insolvent in the amount of $8000 or $9000. There was evidence that possibly there was a balance for betterments or improvements of real estate which ought to be credited against this, but it was a much less amount and the Missouri corporation was indebted to the insolvent. At the time of the execution of the notes the secretary of the Jewell Belting Company came to St. Louis to look after the account, and the execution of the notes by the Illinois corporation jointly with the Missouri corporation was authorized at a meeting of the stockholders of the Illinois corporation, who were the same as the stockholders of the Missouri corporation.

The Todd Pulley and Shafting Works, the insolvent corporation, had no power to become a mere surety on a note, and there was no fact to lead the Jewell Belting Company to suppose it had such power. If there was no consideration for the execution of the notes other than the indebtedness of the Missouri corporation, then the insolvent occupied the relation of such surety. The contract out of which the indebtedness arose was between the Jewell Belting Company and the Missouri corporation. The Jewell Belting Company never looked to the Illinois corporation for payment and had no claim whatever against it. The business of the two corporations was run in the manner above stated, and the stockholders and officers were the same, but they were distinct corporations, and, as we understand it, there is no claim that there was a partnership. There could be no partnership which could render the insolvent corporation liable, because it was not within its power to enter into a co-partnership with the other corporation. *Bishop* v. *American Preservers' Co.* 157 Ill. 284.

It is said, however, that on account of the intimate relation of the two corporations and the stockholders

and officers, the insolvent corporation had notice that the belting was to be sold and accounted for by the Missouri corporation, and of the terms and conditions on which it was consigned. That is true; but the notice it had was that the Missouri corporation could sell the belting, transfer good title, receive payment, and have whatever it could get above the invoice price as the profit. Any other purchaser might have knowledge of the same facts, and yet it would not make a purchaser liable for the belting it bought of the consignee and paid for. If a purchaser should buy belting of the Missouri corporation and did not pay for it, it would be liable to that corporation, and if paid for there would be no liability to anybody. The fact that the same persons owned the stock of the two corporations would not make the Illinois corporation liable for the debts of the other. There is no element of fraud and no estoppel. The insolvent corporation received no benefit and there was no change of status. The insolvent corporation had paid for all the belting it obtained, and the Missouri corporation was largely indebted to it. If the insolvent corporation could not execute a note as surety because that was not a legitimate corporate purpose, the fact that an extension of time to the principal would be sufficient consideration to support the promise of a surety would not make any difference. The corporation would not acquire the power to sign the notes as surety by having or not having a consideration. The Jewell Belting Company did not extend time of payment of any debt to the Illinois corporation, because it owed none. The evidence showed the notes were given merely as surety, and represent nothing but the indebtedness of the Missouri corporation to the payee.

We conclude that the judgment of the county court was right. The judgment of the Appellate Court is reversed and the judgment of the county court is affirmed.

*Judgment reversed.*