## In re LIQUOR DEALERS' SUPPLY CO.

### ANHEUSER–BUSCH BREWING ASS'N v. HIESTAND.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

No. 1,604.

1. CORPORATIONS (§ 370*)—POWERS.

A corporation organized under Illinois law has none of the natural rights or capacities of its individual members, its powers being only those conferred by charter, either in express terms or by necessary implication for the exercise of the powers named.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1515; Dec. Dig. § 370.*]

2. CORPORATIONS (§ 484*)—POWERS—DEBTS OF OTHER CORPORATION—GUARANTY—ULTRA VIRES.

The bankrupt, a corporation authorized to engage in wholesale liquor and rectifying business, and to supply liquor dealers and rectifiers with goods of every description at wholesale and to transact a general commission business, passed a resolution that G. & Co. and another corporation and one of its customers desired to borrow $4,000 to increase its business, and had requested the bankrupt to guarantee the payment of its notes for that sum, and that the treasurer was thereby authorized to guarantee the payment of the notes as requested. At the time the notes were guaranteed the bankrupt sold liquors to the borrower to the amount of $100 per month, and so continued thereafter. *Held*, that the benefit to be derived by the bankrupt through the increase of the borrower's business was indirect, making the transaction one of naked guaranty, which was ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1815; Dec. Dig. § 484.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the bankruptcy proceedings of the Liquor Dealers' Supply Company. An order was passed disallowing the claim of the Anheuser-Busch Brewing Association on objections filed by Henry Hiestand, as trustee in bankruptcy, and claimant appeals. Affirmed.

The appellant, Anheuser-Busch Brewing Association, filed a claim in bankruptcy against the estate of Liquor Dealers' Supply Company, bankrupt,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which was disallowed by the referee on objections filed by the trustee (appellee), and on application for review the District Court confirmed the disallowance; hence this appeal. The claim in question consists of 19 promissory notes, for $100 each, made by E. Goldstein Company, each indorsed with a guaranty of payment, signed by "Sam Moyses" and "The Liquor Dealers' Supply Co., Sam Moyses, Treas."

All the facts were stipulated for submission of the claim and objections thereto substantially as follows:

The bankrupt, Liquor Dealers' Supply Company, was incorporated under the laws of Illinois, and authorized "to engage in the wholesale liquor and rectifying business and to supply liquor dealers, rectifiers and distillers with goods of every description at wholesale, and to transact a general commission business." Two of its officers, together with E. Goldstein, organized a separate Illinois corporation, named E. Goldstein Company, for a restaurant and saloon business. When the notes in controversy were executed, "Sam Moyses was practically in sole control of Liquor Dealers' Supply Company, owning almost all of its stock, and also owned and controlled the stock of E. Goldstein Company." Up to March 1, 1907, the E. Goldstein Company operated its business, but its "stocks and assets" were then "sold to other parties." In April, 1906, E. Goldstein & Co. entered into an arrangement with the appellant to purchase beer from the appellant—having theretofore used in its saloon other beer—for the purpose of securing a loan of money from the appellant; and the latter agreed to loan $4,000, provided the notes were guaranteed by Liquor Dealers' Supply Company. The loan was made accordingly and 40 notes of $100 each were given therefor, bearing such guaranty. Each note was dated April 24, 1906, payable to appellant's order, "maturing monthly for forty months," with interest. Twenty-one of these notes were taken up and paid by the guarantor, and the present claim is for the remainder.

By way of authority for the purported contract to guarantee payment of the notes, a resolution was adopted by Liquor Dealers' Supply Company, reciting, in substance, its engagement "in the business of buying and selling liquors"; that it "is desirous of increasing and extending its said business"; that "any increase in the business of its customers tends directly to increase the business of this corporation"; that "E. Goldstein Company, one of its customers," desires to borrow $4,000 "for the purpose of increasing its business, and has requested this corporation to guarantee the payment of its notes for said sum"; and that the treasurer "be, and he is hereby, authorized and directed in the name of the corporation to guarantee in writing the payment" of the notes as described.

The Liquor Dealers' Supply Company "sold to E. Goldstein Company liquors to the amount of $100 per month" at that time, and so continued thereafter.

Julius Goldizer, for appellant.

William Freidman, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The bankrupt is an Illinois corporation, and the claim filed by the appellant for allowance against the estate in bankruptcy rests alone on purported contracts of the corporation, guaranteeing payment of specific debts of another corporation. All facts involved in the controversy are settled by stipulation, and the appeal from an order disallowing the claim presents a single question of law: Are the promises so made valid obligations against the estate? We are impressed with no doubt either of the true bearing of the material facts so submitted, or of the rule of corporate limitation which then applies for answer to this question.

As the bankrupt, Liquor Dealers' Supply Company, was a corporation organized under the laws of Illinois, it had no powers except those which were conferred by charter, either in express terms or by neces-

sary implication for the exercise of the powers named. It obtained none of the natural rights or capacities of its individual members. Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 48, 11 Sup. Ct. 478, 35 L. Ed. 55, and cases cited; 7 Am. & Eng. Encyc. of Law (2d Ed.) 695. Under its corporate charter the grant of authority is "to engage in the wholesale liquor and rectifying business, and to supply liquor dealers, rectifiers and distillers with goods of every description at wholesale and to transact a general commission business." The inquiry for powers which may be implied for the purposes of the business thus authorized is not free from confusion in opinions cited in the argument (from various jurisdictions), but comment here is unnecessary upon the considerations which have influenced departures from the above stated rule of strict limitation, for the reason that we believe such rule to be settled, for the instant case, by the Illinois decisions, not only through their adoption of the general rule, but by direct interpretation of like charter powers, to confer no implied authority to become answerable for the indebtedness of another party, without interest therein and for mere accommodation, declaring such promises ultra vires the corporation. National Home Building Association v. Bank, 181 Ill. 35, 39, 54 N. E. 619, 64 L. R. A. 399, 72 Am. St. Rep. 245; Wheeler v. Home Savings Bank, 188 Ill. 34, 37, 58 N. E. 598, 80 Am. St. Rep. 161.

In partial recognition of these authorities (as we infer), it is conceded in the brief for appellant:

"That a naked guaranty whereby a corporation enters into a contract of suretyship for another person or corporation in a matter in which it is in no manner interested is outside of the powers of a corporation."

Nevertheless it is contended that a resolution of the corporation—reciting, in effect, that its guaranty is requested by a customer, for a loan desired by the customer to increase his own business, and that such increase of the customer's business "tends directly to increase the business of this corporation"—is effective to escape the rule referred to and give validity to such promise. For this contention, the appellant relies upon a line of cases marking exceptions from the general rule above stated, with the following Illinois decisions cited as leading examples: Richelieu Hotel Co. v. Mil. Encampment Co., 140 Ill. 248, 263, 29 N. E. 1044, 33 Am. St. Rep. 227; Green Co. v. Blodgett, 159 Ill. 169, 42 N. E. 176, 50 Am. St. Rep. 146; Central Lumber Co. v. Kelter, 201 Ill. 503, 66 N. E. 543; Kraft v. West Side Brewery Co., 219 Ill. 205, 76 N. E. 372; Blue Island Brewing Co. v. Fraatz, 123 Ill. App. 26, 29. The Richelieu Hotel Co. and Green Co. Cases are satisfactorily distinguished from the case at bar, in the opinion by Mr. Chief Justice Cartwright, in National Home Building Ass'n v. Bank, ante, and each of the other citations is alike distinguishable. In the first-mentioned case, a subscription made by the hotel company, jointly with numerous other subscribers, to procure the location in Chicago of a military encampment, was held to be within its corporate powers as an "expedient directly calculated to increase the number of patrons of the hotel"; and each of the others is of like nature, having for the single purpose of the subscription or agreement a benefit directly accruing

therefrom to the business of the promisor corporation in obtaining new customers. Assuming that power may be implied "to adopt and promote all reasonable expedients directly calculated to increase the number of patrons of the business," this resolution of the corporation to guarantee payment of its present customer's loan neither states nor contemplates any such direct benefit to the guarantor. The pretense of benefit through increase of the customer's business is indirect, not within either authority cited; and the utmost import of the resolution is to secure the good will of the customer, the usual inducement held out to guarantors, making it a case of "naked guaranty" of the debt of another, not within the corporate powers.

The fact that Moyses owned most of the stock in both corporations may explain the transaction, but it gives the corporation no authority to exceed its powers wherein the interests of creditors and the public are involved.

The claim was rightly disallowed, and the order of the District Court is affirmed.