### GOTSHAL v. MILL FACTORS CORPORATION.

### In re GARTNER IMPORTING CORPORATION.

(Circuit Court of Appeals, Second Circuit. April 30, 1923.)

No. 221.

Bankruptcy ⬤⟶303(3)—Record held to show no fraud or transfer to creditor.

Where three corporations had a joint factoring agreement with defendant, proof that defendant advanced certain sums to one of the corporations, which subsequently became bankrupt, and that corporation at once indorsed the checks for the advances to another one of the corporations, by which they were cashed, whereupon the latter corporation gave defendants its checks for the greater part of that sum, which

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were applied by defendant to the payment of that corporation's creditors, except a balance which was credited to the latter corporation's account with defendant, and was wiped out by other debts, does not show any fraud on the part of the bankrupt corporation or defendant, even if the bankrupt was insolvent at the time the other corporation repaid the money to defendant, and does not show any transfer to defendant from the bankrupt which could be a preference.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Sylvan Gotshal, as trustee in bankruptcy of the estate of the Gartner Importing Corporation, bankrupt, against the Mill Factors Corporation, to set aside as fraudulent certain transfers of money alleged to have been made by the bankrupt to defendant. From a decree dismissing the complaint, plaintiff appeals. Affirmed.

Rounds, Schurman & Dwight, of New York City (John E. Tracy, Frank C. Fisher, and Sylvan Gotshal, all of New York City, of counsel), for appellant.

Samuel J. Rawak, of New York City (Joseph M. Proskauer and J. Alvin Van Bergh, both of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. In the opinion in action No. 1, 289 Fed. 1005, filed contemporaneously herewith, we have described the relations of the three Gartner corporations with each other and with defendant.

The suit at bar proceeded upon the theory that there was a scheme by which moneys of the bankrupt were to be used to pay the debts of the Ribbon Company. At the conclusion of the trial the trial judge announced his decision in simple and colloquial fashion, but just as effectively as if he had written a formal opinion. Between November 5, 1920, and February 12, 1921, defendant, as factor, loaned and advanced to the bankrupt in the form of checks drawn to the bankrupt's order, the sum of $70,650. The amount thus advanced was at once loaned by the bankrupt to Ribbon Company in the following manner:

The bankrupt indorsed the checks, which defendant had advanced to it, and delivered them to Ribbon Company. Thereupon Ribbon Company gave defendant its checks for $58,117.43 out of the $70,650 loan to it by the defendant. The amount so received by defendant was paid out, practically simultaneously, by defendant on the order of Ribbon Company to creditors of Ribbon Company, with the exception of a balance of $5,473.90. This balance was credited to Ribbon Company's account with defendant, and was more than wiped out by other debits on defendant's books against Ribbon Company.

Except for this balance of $5,474.90, defendant received no advantage from these transactions. The record fully supports the conclusion that there was no fraud, as matter of fact, and no transfer to defendant within the contemplation of the law in respect of fraudulent transfers. This branch of the case is well within Armstrong v. American Exchange National Bank, 133 U. S. 433, 466, 10 Sup. Ct. 450, 33 L. Ed. 747, but is not solely dependent upon the fact that

defendant was a mere conduit through which the bankrupt lent money to Ribbon Company and Ribbon Company paid its creditors. On this record, it is very doubtful whether the Gartner Companies were insolvent during the relevant period; i. e., November 5, 1920, to February 12, 1921. On the contrary, the situation was one which, though perilous owing to market conditions, warranted hope of ultimate successful solution, and, indeed, as has come to our notice in similar situations, the forbearance of creditors, during the troublesome times in certain trades, after the Armistice, aided in saving many business enterprises.

We view the case as presenting solely a question of fact, and it will not be profitable to detail the testimony. We think it necessary only to state our conclusions summarily. We are satisfied that defendant had no knowledge of the alleged insolvency of the Gartner Companies and that the Gartners had no intent to defraud. Certainly one fact is proved beyond peradventure, and that is that defendant was in no manner a party to any scheme to defraud the creditors of the Gartner corporations, even if it were to be assumed for purposes of argument, that such a scheme existed. Much reliance is placed on the New York Personal Property Law (Consol. Laws, c. 41). Under section 37 of that statute, it is provided:

"Section 37. *Fraudulent Intent a Question of Fact.* The question of existence of a fraudulent intent in cases arising under this article, is a *question of fact* and not of law."

We find as a fact that there was no fraudulent intent. These conclusions dispose of all the transactions, including the matter of the $5,473.90.

Decree affirmed, with costs.