## REAL ESTATE–LAND TITLE & TRUST CO. v. COMMONWEALTH BOND CORPORATION.

### No. 233.

Circuit Court of Appeals, Second Circuit. Feb. 14, 1933.

Rabenold & Scribner, of New York City (Allan R. Campbell and Charles E. Scribner, both of New York City, of counsel), for appellant.

Clarke & Allen, of New York City (Harold Harper and Arthur R. Gaetjens, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

A summary judgment was entered, under the practice of rule 113 of the New York Rules of Civil Practice, and appellant seeks this review. Appellant sold a bond issue secured by a mortgage on an apartment house site in Philadelphia, Pa. The bonds were issued to finance the building construction, but on March 3, 1927, before completion, a receiver in equity was appointed for the owner of the enterprise, a corporation. The appellee loaned money to the receiver, who conducted the business, as follows: In September, 1927, $19,683.48 to pay the 1926 taxes on the mortgaged property and interest to the bondholders; in April, 1928, $32,454.43 to pay the 1927 taxes and April, 1928 interest and the installment of principal then due.

Appellant guaranteed payment of the first loan, although it had sold all the bonds and was under no obligation with reference thereto. The latter loan was not guaranteed by the appellant, but it was authorized by a court order. Receiver's certificates were issued for both loans. As the certificates for $19,683.48 were renewed, appellant renewed its guaranty. An order of the court April 1, 1929, limited the receiver's authority to issue certificates not to exceed these two sums. But between September, 1928, and March, 1931, additional loans on the receiver's notes, indorsed by him personally, were made by the appellee. Although the court order provided for the payment of authorized certificates from the net rentals, the receiver considered his unauthorized loans as made in anticipation of future rentals and thereafter used such rentals to pay the appellee, and the rentals were applied on the unauthorized notes and not on the authorized certificates,

Appellant contends that the making of these unauthorized loans was a violation of the conditions of its guaranty; that the extension of these credits and expenditures of the rentals by the receiver prejudiced its position as such guarantor. On October 1, 1929, there was a default as to certificates authorized. Between October, 1929, and April, 1930, the receiver paid off $13,000 of his unauthorized loans while the receiver's certificates remained in default.

A plan of reorganization was put forth, and the co-operation of the appellant, as the firm who sold the bonds, was sought. The appellant's president, in an affidavit, says he agreed to take charge of the reorganization with the understanding that the appellant would use its best efforts with its customers who had purchased the bonds to put the plan through, providing it would be released from its guaranty. This is denied. The appellant asserts that such best efforts were made, that 94 per cent. of the bonds were deposited under the plan, and that interest was paid at the rate of 5 per cent. on the certificates of deposit, the receiver borrowing the money to do so. In March, 1931, the receiver was unable to make payments on these certificates. An amended plan was proposed but not consummated, and on July 3, 1931, the appellee demanded payment by the receiver of the notes secured by the receiver's certificates. Payment was not made, and this action followed.

The defenses interposed to this action were (1) ultra vires, an unauthorized guaranty beyond the power of the appellant; (2) breach of conditions by making and paying the unauthorized later loans, which constituted a variation of the risk; and (3) an accord and satisfaction, namely, the agreement to release the claim on the guaranty in consideration of the appellant's active co-operation toward effecting a reorganization advantageous to the appellee.

The guaranty given by the appellant was for the accommodation of the receiver; there was no consideration or profit given therefor, and we think a defense of ultra vires was presented. Williams v. Sawyer Bros., 45 F.(2d) 700 (C. C. A. 2); In re John B. Rose Co., 275 F. 416 (C. C. A. 2). But it is said that the guaranty was given for the purpose of protecting the business and good will of the appellant. The appellant has put into issue the corporate power to make the guaranty. It has been affirmatively pleaded. The appellant was entitled to introduce facts as to the circumstances concerning the making of the guaranty, the assistance or considera-

tion that might come to it. There is a conflict as to the consideration. The appellee has by affidavit shown the nature of the appellant's business and the affiant's opinion as to the purpose of the guaranty. It attaches a copy of the certificate of incorporation. We think a question was presented as to whether the agreement of guaranty was reasonably necessary in the conduct of the business of the appellant and incidental to its authorized business to enable it to accomplish the objects or purposes for which the corporation was created. Gotshal v. Mill Factors Corp., 289 F. 1005 (C. C. A. 2); Wm. Filene's Sons Co. v. Gilchrist Co., 284 F. 664 (C. C. A. 1). A purpose to protect the business and good will of the appellant would necessarily have to await future sales of their bonds to those investors who have bought bonds under the defaulted mortgage. There is no proof or claim that the making of this guaranty would necessarily or directly result in such sales. The chance of future business might well be insufficient to vest corporate powers of guaranty under the circumstances. In re Liquor Dealers' Supply Co., 177 F. 197, 199 (C. C. A. 7); Humboldt Mining Co. v. Amer. Mfg. Co., 62 F. 356 (C. C. A. 6). Nor did the authority to guarantee, stated as the purpose of the corporation in its certificate of incorporation, add to the power conferred by the statute of Delaware where appellant was organized (section 77 of the Delaware Corporation Law [Rev. Code 1915, § 1991]) or enlarge its authority under the law. Ward v. Joslin, 186 U. S. 142, 22 S. Ct. 807, 46 L. Ed. 1093; National Park Bank v. German-American Co., 116 N. Y. 292, 22 N. E. 567, 5 L. R. A. 673. A question of fact as to this defense was presented for a trial court.

█ The court order which authorized renewal of the loan appellant guaranteed provided that the receiver would not issue further receiver's certificates upon any terms whatsoever until the obligation of the receiver's certificates were discharged. The receiver's affidavit admits that he was authorized to sell in an amount not to exceed $52,137.91. He admits that he did not issue certificates in excess of that amount, but did issue receiver's notes for which he made payment to the plaintiffs from rentals. These were without authorization of the court. A question was presented of whether making these unauthorized and forbidden loans and applying receivership funds to repay them before payment of the authorized receiver's certificates discharged the guaranty obligation of the appellant. This issue should not have been disposed of by summary order; for, if the order authorizing the certificates was obeyed, the evidence might show that the receiver's losses would have been limited and that the appellant was prejudiced thereby. Commercial Nat. Bank v. London & Lancashire Indemnity Co., 56 App. D. C. 76, 10 F.(2d) 641; Baldwin v. Becker, 277 F. 930 (C. C. A. 8). The rule is well established that a surety is discharged by the creditor's acts impairing the value of the surety's subrogation. American Surety v. Greek Catholic Union, 284 U. S. 563, 52 S. Ct. 235, 76 L. Ed. 490. It might be shown at the trial that the opportunity of payment of the receiver's certificates, which included the loan guaranteed by the appellant, was impaired by new loans which were paid out of rentals; that the surety's risk was materially changed. The appellee has argued that the unauthorized loans were paid only from net rentals after carrying charges and that subsequent loans were in anticipation of rent collected and went to meet these preferential carrying charges. The appellant, on the other hand, argues that the unauthorized loans are not legal charges against the receivership estate, and are not entitled to parity with authorized loans. These are issues which will be presented at the trial. The receiver, as an officer of the court, is limited in his power to borrow money and bind the estate of the insolvent corporation. Union Trust Co. v. Illinois Midland R. Co., 117 U. S. 434, 479, 6 S. Ct. 809, 29 L. Ed. 963; Northern Finance Corp. v. Byrnes, 5 F.(2d) 11 (C. C. A. 8); Byrnes v. Mo. Nat. Bank, 7 F.(2d) 978 (C. C. A. 8).

█ If an agreement was made in March, 1930, as more particularly sworn to by the president of the appellant, a question of fact may be presented as to whether or not by agreement of the parties an accord and satisfaction was reached which would relieve the surety. The court may not strike out of the answer such an issue or decide the question of credibility of this defense without hearing evidence. The affidavit setting forth this defense cannot be disregarded. Fidelity & Deposit Co. v. United States, 187 U. S. 315, 320, 23 S. Ct. 120, 47 L. Ed. 194; Chamberlain v. Penn. R. R. Co., 59 F.(2d) 986 (C. C. A. 2); General Investment Co. v. I. R. T., 235 N. Y. 133, 139, 139 N. E. 216. As a matter of law, it is not necessary that accord and satisfaction be in writing or under seal. Chesapeake & O. Canal Co. v. Ray, 101 U. S. 522, 25 L. Ed. 792; 3 Williston on Contracts, § 1836.

For these reasons we think that there are issues which should be tried and that it was error to grant the application for summary judgment.

Judgment reversed.