## BYRNES v. MISSOURI NAT. BANK.

(Circuit Court of Appeals, Eighth Circuit. September 4, 1925.)

### No. 6844.

1. Receivers ⊗═82—There is a broad distinction between receivers for private and quasi public corporations.

There is a broad distinction between the class of receivers appointed for purely private business concerns and the class appointed for quasi public corporations, such as railroads.

2. Receivers ⊗═97—Federal receiver is without power to borrow money unless specially authorized.

The general rule of the federal courts is that the powers of their receivers are very limited, and in the absence of special authorization, they have no authority to borrow money, much less to pledge or mortgage property of their cestuis que trust as security for repayment of money borrowed by them.

3. Receivers ⊗═97—Borrowing of money and pledge of assets held unauthorized and invalid.

The receiver for a lumber company, directed to carry on its business, was authorized by the court to borrow $150,000 and issue receiver's receipts therefor, which should be a lien on all the property, subject to underlying mortgages and also secured by 40 per cent. of the receipts from products sold, to be deposited in a special fund. The receiver later borrowed $2,000 from a bank and pledged as security an account receivable for lumber sold by him. Held that both the borrowing and the pledge were beyond his authority and not enforceable against the estate.

Scott, District Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit in equity by the Lima Locomotive Works against the Forked Leaf White Oak Lumber Company. James W. Byrnes, receiver, appeals from an order directing him to pay over money to the Missouri National Bank. Reversed.

Paul Bakewell, Jr., of St. Louis, Mo., for appellant.

Rhodes E. Cave and Thomas S. McPheeters, both of St. Louis, Mo. (Bryan, Williams & Cave, of St. Louis, Mo., of counsel), for appellee.

Before SANBORN and KENYON, Circuit Judges, and SCOTT, District Judge.

WALTER H. SANBORN, Circuit Judge. This is an appeal of James W. Byrnes, successory receiver of the Forked Leaf White Oak Lumber Company, from an order of the court below to pay over to the Missouri National Bank $2,000 of the moneys he collected from the Fisher Body Company, a corporation, in payment for lumber and other materials which his predecessor, Edward R. Butler, had sold out of the property of the lumber company in his possession and control as such receiver, and it presents the question of the authority of a receiver, without the order, direction, or knowledge of the court, whose instrumentality he is, to borrow money to pay the liability he incurs as receiver, and to pledge the choses in action or other property of the corporation which he holds as trustee for its creditors and stockholders to secure the repayment of the moneys he borrows.

The facts which condition the answer to this question in this case are these: On April 23, 1921, in a suit in equity between Lima Locomotive Works, complainant, and the lumber company, defendant, the court

below appointed Mr. Butler receiver of the latter's property and authorized him to "operate and run all mills, stores, logging roads, railroads, or other property" of that company. On March 28, 1922, on the petition of Mr. Butler as such receiver, on the written consent of 181 unsecured creditors, whose claims aggregated $369,184, out of a total of 212 unsecured creditors, the total amount of whose claims was $398,926.69, and in the presence of counsel for the lumber company who did not object, the court below made a written order that Mr. Butler as receiver be empowered to borrow an aggregate amount not exceeding $150,000, and to issue receiver's certificates therefor, secured by a lien, subject to the mortgage and other secured creditors, upon all the property of the lumber company and by "40 per cent. of the proceeds of the sale of lumber, ties, and other forest products made by the receiver from this date, and the receiver is hereby directed and ordered to withhold and deposit in special account 40 per cent. of the proceeds of such sale to be applied upon the payment of the certificates herein authorized." Thereafter, on May 3, 1923, A. A. Rotzien was an employee and salesman of Mr. Butler as receiver. The Fisher Body Company, a corporation, was indebted to Butler as receiver in the sum of $2,714.85, for lumber and material which he had sold and delivered to it out of the property in his hands as receiver. He told Rotzien that he required immediately $2,000 to pay drafts drawn against supplies and materials he had ordered and bills for labor performed for him as receiver. He assigned, indorsed, and transferred to Rotzien his accounts and claims as receiver against the Fisher Body Company, and requested him to procure the $2,000 for him. Rotzien went to the Missouri National Bank, borrowed the $2,000 of it, assigned these accounts to it as collateral security, and turned the money over to Butler as receiver, less $23.73 discount retained by the bank, and Butler used it to pay the drafts and bills already described. Subsequently, by the order of the court below, James W. Byrnes succeeded Mr. Butler as receiver, and as such he collected the accounts of the receiver against the Fisher Body Company for the $2,714.85, placed $2,000 of this money in a special deposit, and on September 15, 1923, by petition advised the court below of the facts of the case and that he was informed and advised that the assignment of the accounts against Fisher Body Company was unauthorized, and prayed the direction of the court as to the disposition of the $2,000. In October, 1923, the bank intervened and claimed the $2,000. There was a final hearing, no controversy about the facts, and the court below was of the opinion that the bank was entitled to the $2,000, and ordered the receiver to pay it over to it.

[1, 2] Mr. Butler, who attempted to assign as security for his borrowings the accounts of his cestuis que trust, the creditors and stockholders of the lumber company, was the receiver of a purely private business concern, not of a quasi public corporation such as a railroad company, and there is a broad distinction between the two classes. Wood v. Guarantee Trust Co., 128 U. S. 416, 9 S. Ct. 131, 32 L. Ed. 472. He was a receiver appointed by a federal court and not by a state court, and, in the absence of special authority, the general rule of the federal courts is that the powers of their receivers are very limited, and that they have no authority to borrow money, much less to pledge or mortgage all or specific parts of the property of their cestuis que trust in their possession as trustees to pay debts or to secure the repayment of money they borrow.

Ordinarily the main purpose of the appointment of a receiver of a private business corporation or company is to prevent, not to promote, the borrowing of money upon its assets and the increase of the indebtedness secured thereon. Davis v. Gray, 16 Wall. 203, 218, 21 L. Ed. 447; Union Trust Co. v. Ill. Midland Ry. Co., 117 U. S. 434, 476, 477, 6 S. Ct. 809, 29 L. Ed. 963; Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408.

[3] Counsel for the bank cite, in support of the order below, Cake v. Mohun, 164 U. S. 311, 315, 17 S. Ct. 100, 101, 41 L. Ed. 447, and this quotation from the opinion in that case:

"Admitting to its fullest extent the general proposition laid down by this court in Cowdrey v. Galveston, Houston, etc., R. Co., 93 U. S. 352, 23 L. Ed. 950, that a receiver has no authority, as such, to continue and carry on the business of which he is appointed receiver, there is a discretion on the part of the court to permit this to be done temporarily when the interests of the parties seem to require it. Under such circumstances, the power of the receiver to incur obligations for supplies and materials incidental to the business follows as a necessary incident to the receivership."

But in that case the property was a hotel in operation. The receiver was ordered by

the court to carry on the business of running the hotel "in substantially the same manner as heretofore." The suit in which the receiver was appointed was for the foreclosure of the mortgage upon the hotel property. At the foreclosure sale Cake had bought the property and had given a bond to pay such amounts as should be found due the receiver on account of his expenditures and indebtedness as receiver. The case Mohun against Cake was a suit upon this bond, to recover an indebtedness incurred by the receiver in the operation of the hotel to which no objection had been made during the operation of the property and before the sale, and, under these circumstances, the Supreme Court permitted a recovery upon the bond for certain expenses of this nature. That ruling, however, is far from being applicable to the case in hand: First, because the authority to incur and pay for supplies and labor in carrying on a business does not include the power to borrow money to carry it on; second, because such authority does not empower a receiver to pledge as collateral security all or part of the property of his cestuis que trust to repay his borrowings; third, because, in that case, the method and limit of the receiver's authority to borrow money had not been expressly prescribed and fixed by the order of the court; and, fourth, in that case there was no attempt by the receiver to assign or pledge any of the assets of the cestuis que trust as security for the borrowings of the receiver, and in the case in hand the receiver, in the face of the precise order of the court, expressly limiting his authority to borrow, and in the face of the pledge as collateral security of 40 per cent. of the proceeds of the choses in action of his cestuis que trust to secure the certificates, attempted to assign the entire indebtedness of the Fisher Body Company to his cestuis que trust as collateral security to his unauthorized borrowing.

The court below had the judicial power, after hearing or giving the parties in interest a chance to be heard, to authorize its receiver to borrow money in specific amounts and on specific terms and to secure the repayment of that money by a pledge or mortgage of some or all of the property of the lumber company, subject to prior liens. But the court's appointment of him as receiver, and its authority to him to operate the property of the lumber company, gave him no such power. The court, after admirable caution and deliberate consideration of the petition of the receiver for authority to borrow money, on the written consent of the great majority in number and amount of the unsecured creditors of the lumber company, empowered the receiver to borrow not exceeding $150,000 on his certificates of indebtedness secured, subject to prior mortgage and other liens, by all the property in the possession of the receiver and by 40 per cent. of the proceeds of the sales that the receiver should make of lumber, ties, and other forest products of the property in his hands. This order was an express grant of authority to the receiver to borrow money and give security for repayment by the method, on the terms, and to the amount there specified, and an equally expressed denial and prohibition of his borrowing money or securing its repayment in any other way or to any greater extent without the further order of the court. In re C. M. Burkhalter & Co. (D. C.) 182 F. 353, 355, 356; Haines v. Buckeye Wheel Co., 224 F. 289, 295, 296, 139 C. C. A. 525; Kirker v. Owings, 98 F. 499, 510, 39 C. C. A. 132; Gutterson et al. v. Lebanon Iron & Steel Co. (C. C.) 151 F. 72, 77.

Mr. Butler was without lawful authority or power to borrow as receiver and to charge the property of his cestuis que trust, the lumber company, its creditors and stockholders, with liability to repay this $2,000 or to secure its repayment by a pledge or mortgage of any of their choses in action or any other property, and the order of the court below must be reversed. It is so ordered.

SCOTT, District Judge (dissenting). I am constrained to dissent from the conclusion of the majority in this case. In my conception, the record does not merely present "the question of authority of a receiver without the order, direction, or knowledge of the court, whose instrumentality he was, to borrow the money to pay the liability he incurs as receiver, and to pledge the choses in action or other property of the corporation which he holds for its creditors and stockholders to secure the repayment of the money he borrows." I think the question presented is rather "whether a court of equity may not ratify the unauthorized act of its receiver (where his good faith is not questioned) in temporarily borrowing money to pay valid current bills, when to deny ratification would unjustly enrich the trust at the expense of an outsider."

The receiver had been appointed and authorized to "operate and run all mills, stores, logging roads, railroads, and other proper-

ty of the company." In operating the business, which was extensive and varied, he had incurred certain current bills. Without special authority he borrowed $2,000 to meet these bills. It is stipulated in the record that the money borrowed "was deposited in the account of the receiver, and was used for the purchase of supplies and the payment of labor and bills and other expenses of the operation of the receivership." No question is raised as to the validity of any of these supply bills or labor bills or receiver's expenses. Had the receiver collected the sum due him from the Fisher Body Company, I think it clear that he might have applied the same to the payment of these bills. He did not make the collection, however, but, without special authority, temporarily borrowed $2,000 and attempted to pledge the Fisher Body Company account. Now it may be conceded in the circumstances that the bank from whom Rotzien borrowed the money at the instance of and for the receiver made the advance at its peril, and, in an action at law against the receiver, had it been permitted to sue, could not have recovered. It may be further conceded that upon application to the court having jurisdiction of the receivership, that court might in its discretion have denied relief, although it would in my opinion be the exercise of a hard discretion. But to say that a court of equity may not in its discretion ratify such act of the receiver is quite another question. The money borrowed clearly went to enrich the trust of the receiver; it liquidated valid claims at the expense of the bank, and in no way to the disadvantage of the receiver's trust. I cannot see that the fact that the court authorized the issue of receiver's certificates is at all material here. There is nothing in the record asserting or implying that the receiver at the time he borrowed the $2,000 exceeded the authorized limit of indebtedness, except as to the form of the transaction. But, even had he done so, he paid valid bills with the money, and performed an act which the court had ample power to authorize, had application been made in the first instance. The order of the court appealed from does not rest merely upon the petition of intervention of the bank, but rests also upon the petition of the receiver for instruction and direction in the matter. I think the District Court might well have made the order which it did sua sponte.

For the reasons I have stated, the judgment of the trial court should be affirmed.

*Certiorari granted 46 S. Ct. 107, 70 L. Ed. —.