HERMAN C. MILLER COMPANY, Plaintiff, Appellee, v. SILVERS MANUFACTURING COMPANY, Defendant, Appellee.

UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant, v. G. N. COUSINS, Receiver, Appellee.

No. 44701.

JANUARY 16, 1940.

Pike, Sias & Butler, for appellee.

Havner, Flick & Powers and McCoy & Beecher, for appellant.

RICHARDS, J.—The instant suit had its inception when plaintiff-appellee, one of the creditors of defendant-appellee Silvers Manufacturing Company, filed a petition praying that a receiver be appointed to take charge and control of and to conserve the assets of defendant-appellee and praying further that such receiver be authorized to continue the business of defendant-appellee until the further order of the court. Defendant-appellee filed answer to the petition admitting its allegations and consenting that the appointment be made. The court thereupon entered an order appointing appellee Cousins and one Mullen as such receivers and authorizing and directing them as receivers to continue the operation of the business of defendant-appellee until a certain report was made and until further order of the court. The two appointees immediately qualified as such receivers. All that has been related occurred on May 6, 1932. On that date the receivers took charge and possession of defendant's assets and thereafter continued the business of the defendant corporation under the court's directions. On October 4, 1933, an order was entered that the receivers proceed to sell all of the assets and business of the Silvers Manufacturing Company including patents and good will, the court's finding being that the receivers had proceeded with the operation of the company and the development of its various lines as far as could be done advantageously under a receivership. During the period of such operation reports with reference thereto were made by the receivers from time to time and the court made continuing orders for the further operating of the business.

On September 16, 1937, appellee Cousins, the then sole receiver, filed his final report, showing a balance in his hands of $5,959.70. Thereto claimant-appellant United States Fidelity and Guaranty Company filed objections in which it prayed that the receiver be not discharged until he shall have paid to the objector the portion of its claim of $29,361 that will remain unpaid after application thereon of the moneys in the hands of the receiver as shown in his final report. Upon a hearing the court overruled the objections and approved the final report, and directed that the receiver pay upon the objector's claim the money in his hands less the receiver's compensation of $750 and the taxable costs in the case. From that order the

objector, United States Fidelity & Guaranty Company has appealed.

Appellant's complaint is that the court erred in not holding the receiver Cousins personally liable to appellant for such portion of appellant's claim as will remain unpaid after applying thereon the cash in the hands of the receiver. The factual situation having to do with appellant's complaint is as follows: On November 23, 1931, appellant as surety and the Silvers Manufacturing Company and Samuel Silvers as the principals, had executed to the collector of internal revenue a bond in the penal sum of $27,000, reciting that the two principals had submitted an offer in compromise in the sum of $27,000 payable in twenty-four monthly installments in full settlement of all taxes penalties and interest in respect of income tax returns for the years 1925 to 1928 inclusive, and conditioned that if said offer be accepted then the bond to be in full force and effect until the $27,000 with interest shall be paid, otherwise to be null and void. The offer was accepted. An action upon the bond brought by the United States of America against appellant was settled and dismissed on September 28, 1936, upon payment by appellant of $29,361 in satisfaction of its liability. On January 13, 1935, appellant had filed an application asking that no distribution of the assets in the hands of the receiver be made until after the determination of above-mentioned action that had been commenced and was still pending against appellant. As grounds for the application it was therein alleged that the suit on the bond was for taxes that were a first and prior lien as against all other claims in said receivership, and that if said claim be established against appellant as surety the judgment so recovered will be prior and superior to any other claims pending in said estate. On November 3, 1936, appellant filed an amendment to its application, setting out that it had made the payment of $29,361 on account of its liability on the bond and in this amendment prayed that the receiver be directed to turn over to the appellant all the funds in his hands after payment of the court costs and expenses of the receivership, to be applied upon the tax liability of the Silvers Manufacturing Company. Following a hearing on the application as amended an order was entered on September 9, 1937, "that the claim of the United States

Fidelity and Guaranty Company is allowed and established as a prior and preferred claim against all of the assets of the Silvers Manufacturing Company, defendant, in the hands of G. N. Cousins receiver in amount of $29,361; and said claim is adjudged and decreed by this court to be entitled to priority of payment against all creditors of the Silvers Manufacturing Company who have filed claims in this court against the receiver and the property and the funds in his hands; and that said claim is entitled to prior and preferred payment except only as to the costs and expenses including attorney's fees for the attorneys for the receiver in this court.'' Parenthetically it may be said that we find no explanation in the record for the fact that the claim was allowed for the full amount paid by appellant in respect of income taxes of both principals on the bond, one of them being Samuel Silvers.

The final report showed that the $5,959.70 of cash in the hands of the receiver was the amount that remained after he had paid the liabilities incurred in the continuing of the business of defendant-appellee. These liabilities included such items as purchases of materials and employment of labor in carrying along the manufacturing and selling of washing machines and other articles that were in process of manufacture by the Silvers Manufacturing Company when this action was brought. Appellant, relying on inventories and reports of accountants that are in the record, claims that when the receivers were appointed they came into possession of assets of such value that the proceeds from an immediate sale of these assets would have been more than sufficient to have paid in full the income tax liability of the Silvers Manufacturing Company that was secured by the bond on which appellant was surety. Appellant urges that, because the receiver did not forthwith reduce those assets to cash and apply them upon the income tax liability, he is personally liable to the extent that the cash now on hand is insufficient to pay the $29,361. Although it is clear that the order that the receivers continue the business was asked by creditors and was carefully considered by the court from time to time while the business was being continued, nevertheless, says appellant, the receiver may not justify the diminishment of the original assets by saying it resulted from the continuing of the business, because the

order that the business be continued was void and a nullity so far as it affected the rights of appellant. But it appears to us that a misinterpretation of what were the rights of appellant underlies the proposition and renders untenable the position appellant has taken, as will hereinafter be pointed out.

▇▇ In support of its contention appellant cites the case of Continental and Com. T. & S. Bank v. Muscatine, Burlington and So. Ry. Co., 202 Iowa 579, 210 N. W. 787, 50 A. L. R. 139, as holding that ''The right of a judgment creditor of an insolvent railway to due process on the issue whether the receiver shall continue the operation of the road and whether the operating expenses shall be given priority over existing judgments is not satisfied by giving the creditor a hearing on the issue whether such priority shall be ordered as to expenses already incurred.'' But this authority does not aid us. The reason is this—appellant held no lien upon the assets of the Silvers Manufacturing Company, nor had the United States taken steps necessary to acquire a lien under the federal revenue laws. In the instant case appellant was no more than a creditor-claimant. True, as such claimant it had recourse to section 12719, Code 1935, and section 191, Tit. 31, U. S. C. A. But what these enactments afforded appellant as a claimant was no more than a right to be paid when there were available proceeds from the assets of the Silvers Manufacturing Company before payments from such proceeds could properly be made to other claimants not so favored by these statutes. It was within the discretion of the court to appoint the receiver and to direct him to temporarily carry on the business when the interests of the parties seemed to require it. Obligations incidental to the business were, under such circumstances, a necessary incident to the receivership. Cake v. Mohun, 164 U. S. 311, 17 S. Ct. 100, 41 L. Ed. 447. Until a fund became available for distribution to the creditors of the Silvers Manufacturing Company there was nothing to be paid even to preferred creditors. There was no such fund until the expenses incidental to the receivership had been paid. United States v. Johnson, 2 Cir., 5 F. 2d 951; In re Holmes Manufacturing Company, 19 F. 2d 239. The fact that appellant was entitled to be paid before there could be payments from the same fund to other claimants does not distinguish appellant from the other claimants in any

such manner as to furnish a reason for appellant's proposition that the order was null and void with respect to appellant.

There is something said in appellant's argument to the effect that the receiver is liable because of his malfeasance. or misfeasance. But we fail to find that it was so claimed in the trial court aside from the proposition that the receiver proceeded under a void court order. The questions raised by the appellee-receiver, whether the appellant was judicially estopped by the order of September 9, 1937, and whether laches and estoppel appear on account of appellant having had knowledge from the time it signed as surety the receiver's bond on May 6, 1932, and continuously thereafter, that its principal Cousins was operating the business under the court order, without objection or protest on appellant's part, require no consideration as it already appears that the objections to a discharge of the receiver without imposing on him personal liability were properly overruled. The order from which the appeal is taken is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.